UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JESSICA MATTHEWS *on behalf of* R.T., A MINOR CHILD, *Plaintiff*, <br><br> v. <br><br> BENJAMIN BARTONE *et al.*, *Defendants*. | No. 3:19-cv-1932 (JAM) |

**RULING GRANTING UNOPPOSED MOTION FOR SUMMARY JUDGMENT**

The plaintiff on behalf of her minor son has filed this lawsuit against the City of Derby and numerous Derby police officers. The complaint alleges that the police officers violated the minor son's rights during an encounter with him following a Fourth of July fireworks display in 2018.

The defendants have filed a motion for summary judgment, and the plaintiff—despite being represented by counsel—has not filed any objection or response. Because my review of the undisputed factual record does not disclose any genuine fact issue for trial, I will grant the defendants' unopposed motion for summary judgment.

### BACKGROUND

The plaintiff in this action is Jessica Matthews who has brought this action on behalf of her minor son, R.T. The defendants in this action are the City of Derby and several of its police officers including Benjamin Bartone, Joseph Townsend, Timothy Conlon, Patrick Foley, Bryan Grogan, and Gerald Narowski.

The facts relevant to this motion are uncontested, because R.T. has not filed any objection or other response to the defendants' motion for summary judgment. In accordance with

1

the Court's local rules, the defendants filed a statement of material facts along with supporting admissible evidence.[1] As a result of the lack of any objection to the summary judgment motion, I will credit the statement of facts filed by the defendants to the extent that these stated facts are properly supported by evidence that is admissible for summary judgment purposes. *See* D. Conn. L. Civ. R. 56(a)(3); *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014); *Grimes v. McDonald*, 2021 WL 3773327, at *2 (D. Conn. 2021).

On July 3, 2018, Derby hosted a fireworks display to celebrate the Fourth of July.[2] The annual event draws over 20,000 spectators.[3] As people headed home after the fireworks, a large group gathered and spilled onto the roadway and blocked traffic.[4] R.T. was part of this crowd.[5] Officers told the group to disperse, but R.T., like others, ignored their commands.[6]

Multiple officers, including Patrick Foley, Timothy Conlon, Joseph Townsend, and Benjamin Bartone, tried to clear the area.[7] But the crowd still refused to move.[8] While trying to get R.T. to leave, Bartone said to him: "White boy wants to be like them."[9] R.T., like Bartone and all the officers that night, is white, while the juveniles he was with were predominantly black.[10]

The police continued trying to clear the area, but tensions quickly escalated. The crowd yelled at the officers.[11] One woman screamed at Foley, accusing him of being racist and

---

[1] *See* D. Conn. L. Civ. R. 56(a)(1); Doc. #42.
[2] Doc. #42 at 1 (¶ 1) (Grogan Aff. ¶ 5).
[3] *Id.* at 1 (¶ 2) (Grogan Aff. ¶ 7).
[4] *Id.* at 3 (¶¶ 10–11) (Foley Aff. ¶¶ 15–16).
[5] *Id.* at 3 (¶ 12) (Foley Aff. ¶ 17).
[6] *Id.* at 5 (¶ 22) (Bartone Aff. ¶ 19).
[7] *Id.* at 4 (¶ 18) (Bartone Aff. ¶¶ 12–14).
[8] *Ibid.*
[9] *Id.* at 5 (¶ 23) (Bartone Aff. ¶ 21).
[10] *Id.* at 6 (¶ 25) (Bartone Aff. ¶ 11; Video recorded by R.T.).
[11] *Id.* at 7 (¶ 32) (Foley Aff. ¶ 30).

harassing kids.[12] Others attempted to get the officers' badge numbers.[13] Several of the young people, including R.T., began to record the officers with their cellphones.[14] Foley requested backup, and Bryan Grogan, a police sergeant, arrived on the scene.[15]

R.T. stood in the street as he video-recorded the officers.[16] He got very close to them, often within just a few inches of their nametags.[17] When R.T. held his phone a few inches from Bartone's face, Bartone told him to move it away.[18] R.T. ignored Bartone.[19] Grogan then grabbed the cellphone from R.T. and immediately handed it back.[20] He held it for no more than a second, though he accidentally ended the recording.[21] Grogan told R.T. that he had a right to videotape the police, but only from a reasonable distance and that he could not just stick his phone in officers' faces.[22] At no point did an officer touch R.T.; only his phone was grabbed.[23] R.T. and his group interacted with the police for over twenty minutes, until the group moved to the porch of a private home.[24]

Two of R.T.'s friends recorded the officers from a greater distance, and their phones were not taken.[25] One of their videos generally confirms the officers' account of this incident.[26]

A day later, R.T.'s mother called the Derby police department to file a complaint.[27] Lieutenant Stanko called back the next day, and a few days later R.T. and his mother met with

---

[12] *Id.* at 6 (¶ 29) (Foley Aff. ¶¶ 26–27).
[13] *Id.* at 7 (¶ 30) (R.T. Depo. Trans. T33:17–20).
[14] *Id.* at 7 (¶ 32) (Foley Aff. ¶ 30).
[15] *Id.* at 7, 8 (¶¶ 31, 34) (Foley Aff. ¶¶ 28–29; Grogan Aff. ¶¶ 8–10).
[16] *Id.* at 10 (¶ 46) (R.T. Depo. Trans. T44:1–7).
[17] *Id.* at 7 (¶ 33) (Grogan Aff. ¶ 21).
[18] *Id.* at 9 (¶¶ 41–42) (Bartone Aff. ¶ 25).
[19] *Ibid.* (Video sent to Jessica Matthews from R.T.'s friend).
[20] *Id.* at 9, 10 (¶ 43) (Grogan Aff. ¶¶ 24–28).
[21] *Id.* at 10–11 (¶¶ 49–50) (Grogan Aff. ¶ 28; R.T. Depo. Trans. T73:17–74:23).
[22] *Id.* at 9–10 (¶ 44) (Grogan Aff. ¶ 25).
[23] *Id.* at 11 (¶ 51) (R.T. Depo. Trans. T38:6–11).
[24] *Id.* at 11 (¶ 52) (R.T. Depo. Trans. T54:25–56:14).
[25] *Id.* at 7 (¶ 32) (Grogan Aff. ¶ 27).
[26] Doc. #54-12 (Video sent to Jessica Matthews from R.T.'s friend).
[27] Doc. #54-9 at 2 (Stanko Aff. ¶ 6).

Lieutenant Stanko, shared their videos with him, and made a formal statement.[28] R.T.'s mother later testified that she was "able to make a complaint," that she met with Chief of Police Narowski, and that Bartone was disciplined for his comment.[29]

R.T. has filed this lawsuit claiming that the defendants violated his constitutional rights under the First, Fourth, and Fourteenth Amendments, as well as certain rights under state law.[30] The defendants move for summary judgment on all claims.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Even though the facts here are undisputed, the Court must view them in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).[31]

### *Count One — First Amendment*

In Count One, R.T. claims that the defendants "chilled the plaintiff's rights under the First Amendment, inter alia, to peaceably assemble, to film police officers and

---

[28] *Id.* at 2–3 (Stanko Aff. ¶¶ 7–15).
[29] Doc. #54-13 at 5 (Jessica Matthews Depo. Trans. T50:1–7).
[30] Doc. #1.
[31] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

4

to make civilian complaints about the misconduct of police officers."[32] I will address each of these claims in turn.

First, as to R.T.'s right to peaceably assemble, the Second Circuit has ruled that "government officials may stop or disperse" large crowds when a "clear and present danger of … disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears." *Jones v. Parmley*, 465 F.3d 46, 56–57 (2d Cir. 2006). Here, it is undisputed that the officers were present to maintain order after a very large crowd gathered for a fireworks display. R.T. and others were gathered in the road, blocking traffic. The officers did not violate the First Amendment right to peaceably assemble when they acted to clear the crowd from blocking a public roadway.

Second, as to R.T.'s right to video-record the police, "[n]either the Supreme Court nor Second Circuit precedent has squarely established that an individual who is the subject of police activity has the right to record police performing their official duties." *Picard v. Torneo*, 2019 WL 4931353, at *4 (D. Conn. 2019). At best, however, the First Amendment right of any person to video-record the police is subject to reasonable time, place, and manner restrictions that include not doing so in a manner that impedes police officers from doing their duties. *See Fields v. City of Philadelphia*, 862 F.3d 353, 360 (3d Cir. 2017); *Leibovitz v. City of New York*, 2018 WL 1157872, at *8 (E.D.N.Y. 2018); *Charles v. City of New York*, 2017 WL 530460, at *24–25 (E.D.N.Y. 2017). Here, it is undisputed that R.T. held his phone only a few inches from Bartone's face and refused Bartone's command to move away. Grogan did not violate R.T.'s First Amendment rights when he very briefly took possession of the phone to prevent R.T. from continuing to impede the police in their duties.

---

[32] Doc. #1 at 10 (¶ 55).

Third, as to R.T.'s claim that he was unable to file a complaint, it is undisputed that R.T.'s mother successfully lodged a complaint with the police, and she received a response. Lieutenant Stanko personally met with R.T. and his mother within a week of the incident, and R.T.'s mother met with Chief Narowski.

In short, there is no genuine issue of fact to show that the defendants violated any of R.T.'s First Amendment rights. Accordingly, I will grant the defendants' motion for summary judgment on Count One.

### Count Two — Equal Protection

In Count Two, R.T. claims that he was subject to racial discrimination or selective enforcement of the law in violation of the Fourteenth Amendment.[33] "The Equal Protection Clause … commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to state a claim for selective enforcement of the law in violation of the Equal Protection Clause, a plaintiff must show that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000).

R.T. bases his selective enforcement claim on the improper race-based statement made by Bartone that "White boy wants to be like them." But a law enforcement officer's racial comment—standing alone—does not amount to a violation of the Equal Protection clause. *See*

---

[33] Doc. #1 at 11 (¶ 55).

*Lee v. Mackay*, 29 F. App'x 679, 680–81 (2d Cir. 2002) ("Lee makes no cognizable equal protection claim from an allegation of racial comments alone"); *Towns v. Stannard*, 431 F. Supp. 3d 44, 66–67 (N.D.N.Y. 2019) (law enforcement not liable under Equal Protection clause for race-based comments made to driver during traffic stop); *Heyliger v. Krygier*, 335 F. Supp. 3d 482, 495 (W.D.N.Y. 2018) (noting that prison officers' "use of racial epithets or discriminatory comments reflecting racial prejudice do not, without more, violate the Constitution").

Apart from Bartone's comment, there is no genuine issue of fact to show that R.T. was subject to different or adverse treatment by any of the defendants because of his race. Accordingly, I will grant the defendants' motion for summary judgment as to Count Two.

### *Count Three — Fourth Amendment*

In Count Three, R.T. claims that the police officers subjected him to unreasonable force in violation of the Fourth Amendment.[34] The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Because the Fourth Amendment protects against unreasonable seizures, it has long been recognized that the Fourth Amendment is violated if the police use excessive force against a free person for the purpose of arresting or restraining his or her freedom of movement. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 388 (1989). Whether police officers' use of force is "excessive" must be judged by "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. A court must give "careful attention to the facts and circumstances of each particular case," including (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others,"

---

[34] Doc. #1 at 11 (second ¶ 55).

7

and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The undisputed facts do not show that any of the defendants used excessive force against R.T. They did not physically touch him. Although Grogan seized R.T.'s phone momentarily in response to his refusal to stop holding it within inches of Bartone's face, this response was not excessive or constitutionally unreasonable under the circumstances.

In short, there is no genuine fact issue to show that the defendants used excessive force. Accordingly, I will grant the defendants' motion for summary judgment as to Count Three.

### Count Four — City of Derby

In Count Four, R.T. claims that the City of Derby should be liable for the violation of his constitutional rights by its police officers.[35] It is well established that a municipality may be liable under 42 U.S.C. § 1983 for the unconstitutional misconduct of its police officers only if the misconduct was caused by a municipal policy, practice, or custom, or if it was caused by a municipality's deliberate indifference and inaction in light of a history of prior similar constitutional deprivations by the municipality's police officers. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978); *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018). But because R.T. has not established that any of his constitutional rights were violated by any of Derby's police officers, he has no grounds to proceed against the City of Derby. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Accordingly, I will grant the defendants' motion to dismiss Count Four.

---

[35] Doc. #1 at 12–14 (¶¶ 55–69).

*Counts Five and Six — state law claims*

R.T. also brings Connecticut state law claims, including a claim for racial profiling under Conn. Gen. Stat. § 54-1*l* (Count Five) and a claim for intentional infliction of emotional distress (Count Six). But in the absence of a cognizable federal law claim, I decline to exercise supplemental jurisdiction over these state law claims. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

## CONCLUSION

The Court GRANTS the defendants' unopposed motion for summary judgment (Docs. #37, #40, #54). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 31st day of January 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge